IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHASITY N. MEADE,** | ) | |
| Plaintiff | ) | Civil Action No. 2:22cv00016 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social** | ) | By:  PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Chasity N. Meade, ("Meade"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 423 and 1381 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may

be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Meade protectively filed applications for DIB and SSI on January 23, 2020, alleging disability as of May 8, 2018, due to anxiety, depression, hypertension, pinched nerves in her back and an autoimmune disease. (Record, ("R."), at 20, 221-22, 228-32, 260, 296.) The claims were denied initially and on reconsideration. (R. at 122-44.) Meade requested a hearing before an administrative law judge, ("ALJ"). (R. at 145-46.) A hearing was held on November 18, 2021, at which Meade was represented by counsel. (R. at 41-65.)

By decision dated December 6, 2021, the ALJ denied Meade's claims. (R. at 20-33.) The ALJ found Meade met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2022. (R. at 22.) The ALJ found Meade had not engaged in substantial gainful activity since May 8, 2018, the alleged onset date.[1] (R. at 22.) The ALJ determined Meade had severe impairments, namely cervical degenerative disc disease with history of two surgeries; liver disorder; obesity; hypertension; major depressive disorder; and generalized anxiety disorder, but he found Meade did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.)

---

[1] Therefore, Meade must show that she became disabled between May 8, 2018, her alleged disability onset date, and December 6, 2021, the date of the ALJ's decision, to be eligible for DIB benefits.

The ALJ found Meade had the residual functional capacity to perform sedentary[2] work, except she could concentrate, persist and maintain pace adequately for simple, routine (noncomplex) tasks; she could have no public interaction; and she could have occasional interaction with co-workers and supervisors.[3] (R. at 25.) The ALJ found Meade was unable to perform any of her past relevant work. (R. at 31.) Based on Meade's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Meade could perform, including the jobs of a document preparer and a surveillance systems monitor. (R. at 32-33, 62-63.) Thus, the ALJ concluded Meade was not under a disability as defined by the Act, from May 8, 2018, through the date of the decision, and she was not eligible for SSI and DIB benefits. (R. at 33.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2022).

After the ALJ issued his decision, Meade pursued her administrative appeals, (R. at 216-18), but the Appeals Council denied her request for review. (R. at 6-10.) Meade then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2022). This case is before this court on Meade's motion for

---

[2] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2022).

[3] The ALJ also placed several limitations on Meade's physical work-related abilities; however, since Meade's argument centers around her mental limitations, the court will discuss only the limitations related to her mental residual functional capacity. (R. at 25.)

summary judgment filed February 7, 2023, and the Commissioner's motion for summary judgment filed March 8, 2023.

## II. Facts[4]

Meade was born in 1988, (R. at 221), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a college education and vocational training in cosmetology. (R. at 261.) Meade has past relevant work as a clinic clerk and a collections clerk. (R. at 61.) Meade stated she experienced crying spells and agitation daily. (R. at 54-55.) She stated she could not return to her previous employment due to back pain and anxiety, but later stated she could not return to her previous job based on an inability to sit for more than 45 minutes during an eight-hour workday. (R. at 59-61.) Meade stated she watched television; played games on her phone; spent time with her family; "sometimes" had problems getting along with family, friends, neighbors or others depending on her anxiety and depression; stayed at home on the couch; and took care of her daughter. (R. at 274-75, 290, 1561.) She reported she needed special reminders to take care of personal needs and grooming. (R. at 291.)

In rendering his decision, the ALJ reviewed records from Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Richard Surrusco, M.D., a state agency physician; Nicole Sampson, Ph.D., a state agency psychologist; Community Physicians; Frontier Health; and Melinda M. Fields, Ph.D., a licensed psychologist.

---

[4] Meade's only dispute is with respect to the ALJ's assessment of her mental limitations. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-6). Therefore, the court will address the facts relevant to Meade's mental residual functional capacity.

From 2015 through 2021, Meade was treated at Community Physicians for neck pain. In June and July 2015, Meade complained of depressed mood and anxiety. (R. at 930, 938, 949.) Her mood and affect were normal. (R. at 953.) Subsequently, it was noted that Meade's anxiety had improved, and her depression and anxiety were stable. (R. at 758, 764-65, 773, 792, 808, 813, 827, 855.) Meade reported feeling better since starting counseling and stated she believed her medication was helping. (R. at 748.) In March 2021, Meade reported intermittent depression resulting from fatigue and financial and family stressors. (R. at 1647.) She stated she was able to perform her activities of daily living without limitations. (R. at 1647.) Throughout 2021, Meade was alert and fully oriented, and her speech, behavior, thought content, attention, comprehension and judgment were normal. (R. at 1628-29, 1634, 1641, 1670, 1681-82, 1696-97.)

On October 1, 2020, Meade was seen for intake at Frontier Health for complaints of anxiety, depression and panic attacks.[5] (R. at 1317-34.) She reported crying spells, which she related to not working for the previous two years. (R. at 1319.) Alex Hamm, M.Ed., a counselor, noted that Meade was sufficiently groomed; she smelled unclean; she was fully oriented; her thought process was linear and logical; and her affect was coherent and congruent. (R. at 1317.) On October 13, 2020, Meade reported crying spells, which she related to parental and child relationship issues. (R. at 1313.) Hamm diagnosed generalized anxiety disorder; major depressive disorder, recurrent episode, severe; and panic disorder. (R. at 1337.)

---

[5] These notes show that Meade was seen for intake on October 10, 2014, for complaints of work stress, agitation and anxiety. (R. at 1319.) It was noted that Meade's mental health issues dated back to 2007 when her son was stillborn. (R. at 1319-20.) Examination findings showed Meade had an appropriate appearance, behavior, speech, mood and affect; she was fully oriented; and her memory, judgment and insight were not impaired. (R. at 1326.)

On November 16, 2020, Howard S. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Meade's depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders were nonsevere. (R. at 73-74.) He opined Meade had mild limitations on her ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage herself. (R. at 73.) Leizer noted that the medical record was largely devoid of mental status complaints, and her most recent mental status examination in October 2020 showed no significant abnormalities.[6] (R. at 74.) He noted Meade's complaints of nervousness and depression appeared situational. (R. at 74.) On March 3, 2021, Nicole Sampson, Ph.D., a state agency psychologist, completed a PRTF, which mirrored that of Leizer. (R. at 105-06.)

On October 20, 2021, Melinda M. Fields, Ph.D., a licensed psychologist, evaluated Meade at the request of Disability Determination Services. (R. at 1558-64.) Meade denied involvement in inpatient psychiatric/psychological treatment[7] and denied use of illicit substances or abuse of prescription medications. (R. at 1559-60.) Meade's hygiene and grooming appeared good; she was pleasant and cooperative; she had adequate eye contact; she was fully oriented; her mood was depressed, as evidenced by facial expression and tearfulness; her affect was congruent to mood; her stream of thought was organized and logical; she exhibited no evidence of a thought content impairment or perceptual disturbances; her

---

[6] On December 31, 2020, Dr. Richard Surrusco, M.D., a state agency physician, noted Meade's anxiety and depression were controlled with treatment, and there was no significant evidence of severe deficits. (R. at 75.) He noted Meade's allegations of anxiety, but she indicated no deficits to being able to go into public places, manage her own finances and tend to normal activities of daily living. (R. at 75.)

[7] Meade stated that, in 2015, she attended two counseling sessions at Frontier Health, and she attended three sessions in 2020. (R. at 1560.)

judgment was impaired, as evidenced by responses to presented scenarios; her immediate memory was normal; her recent recall was impaired, as she could recall only one of four words after a delay; her concentration was impaired, as evidenced by serial three performance; and her pace and gait were normal. (R. at 1561-62.) The Minnesota Multiphasic Personality Inventory – 3 ("MMPI-3"), and the Beck Anxiety Inventory, ("BAI"), were indicative of significant depressive and anxiety-related symptoms. (R. at 1562-63.) The Beck Depression Inventory, ("BDI"), was indicative of severe depression symptomatology. (R. at 1562-63.) Fields diagnosed major depressive disorder, recurrent, severe without psychotic features; generalized anxiety disorder; and panic disorder. (R. at 1563.)

That same day, Fields completed a mental assessment, finding Meade had mild limitations in her ability to follow work rules and to maintain appearance. (R. at 1565-67.) She opined Meade had moderate limitations, but still could function satisfactorily, in her ability to interact with supervisors; to understand, remember and carry out simple job instructions; and to demonstrate reliability. (R. at 1565-66.) Fields opined that Meade had an unsatisfactory ability to make all other occupational, performance and personal/social adjustments. (R. at 1565-66.) She found Meade would be absent from work more than two days a month. (R. at 1567.) Fields based these findings on Meade's panic attacks; severe depressive symptoms; and impaired memory, concentration, social functioning and judgment. (R. at 1565-67.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2022). *See also Heckler v. Campbell*,

461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2022).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ

sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Meade argues the ALJ erred by improperly determining her mental residual functional capacity by failing to give full consideration to Fields's findings on the severity of her mental impairments. (Plaintiff's Brief at 5-6.)

Meade filed her application in January 2020; thus, 20 C.F.R. §§ 404.1520c, 416.920c govern how the ALJ considered the medical opinions here.[8] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2022). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5) (2022) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (2022).

---

[8] 20 C.F.R. § 404.1520c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[9] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2022). The ALJ found Meade had the residual functional capacity to perform sedentary work, except she could concentrate, persist and maintain pace adequately for simple, routine (noncomplex) tasks; she could have no public interaction; and she could have occasional interaction with co-workers and supervisors. (R. at 25.)

---

[9] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2022).

In making his residual functional capacity finding, the ALJ found Fields's October 2021 mental assessment unpersuasive, as it was unsupported and inconsistent with her own examination findings and with the mental status examination findings of Meade's treating providers. (R. at 31.) The ALJ acknowledged that Meade appeared depressed and anxious during Fields's evaluation; however, the record in general did not indicate anxiety issues when meeting with her treating providers or indicate significant issues with panic attacks. (R. at 31.) Meade testified at her hearing that she experienced anxiety in performing her work as a check-in clerk, but she then stated that only her neck issues prevented her from returning to this job. (R. at 24.) To accommodate Meade's complaints of anxiety, the ALJ found she could have no interaction with the public. (R. at 24.) While Meade had impaired concentration during Fields's evaluation based on the serial 3's test, her treating providers did not report concentration issues. (R. at 31.) Thus, the ALJ found the evidence indicated Meade would be able to maintain concentration for simple, routine tasks. (R. at 31.) The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a) (2022); *Menkes v. Astrue,* 262 F. App'x 410, 412 (3d Cir. 2008) ("[P]erforming a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."). Unskilled work generally is low stress and involves remembering only very short and simple instructions in a routine environment in which "concentration is not critical." Program Operations Manual System, ("POMS"), DI 25020.010(B)(3), available at http://policy.ssa.gov/poms.nsf/lnx/0425020010 (effective Apr. 5, 2007) (explaining that unskilled work involves "remember[ing] very short and simple instructions," and that "concentration is not critical").

The ALJ stated he found the opinions of the state agency psychologists unpersuasive. (R. at 31.) The state agency psychologists opined Meade's mental impairments were not severe. (R. at 31.) The ALJ noted that, although the medical record did not indicate "great psychological difficulty," the record did show that Meade had mental health issues. (R. at 31.)

Records from Meade's treating providers show that Meade was alert and fully oriented; she had intact memory; and normal mood, affect, behavior, speech, judgment, insight, thought content, cognition and memory. (R. at 463, 475, 485, 497, 501, 504, 507, 967, 970, 1287, 1295, 1347-48, 1358, 1471, 1482, 1488, 1492, 1495, 1548, 1557.) Although Meade reported anxiety and depression, she denied memory loss or lapses, behavioral problems and confusion. (R. at 422, 429, 496, 503, 1035, 1128, 1139.) Meade reported feeling better since starting counseling and stated she believed her medication was helping. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). It was routinely noted that Meade's anxiety and depression were stable. (R. at 1147, 1151, 1155, 1159, 1169, 1177, 1181, 1353-54, 1366-67.)

The ALJ also noted that Meade cared for her daughter, which indicated "intact cognitive ability." (R. at 24.) As noted above, Meade's treating providers regularly found that she had normal thought content, cognition and memory. Despite her complaints of depression and anxiety, Meade reported she was able to perform her activities of daily living without limitations. (R. at 1647.) Meade stated she watched television; played games on her phone; spent time with her family; and "sometimes" had problems getting along with family, friends, neighbors or others depending on her anxiety and depression.

Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his mental residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2. Substantial evidence exists in the record to support the ALJ's mental residual functional capacity finding; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Meade was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Meade's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioners decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    November 9, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE